## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS *ex rel*. LISA MADIGAN, Attorney General of the State of Illinois, | ) ) ) | No. _____ |
| | ) | |
| *Plaintiff,* | ) | *(Electronic Filing)* |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| SUBURBAN EXPRESS, INC.; ALLERTON CHARTER COACH, INC.; and DENNIS TOEPPEN, individually and in his official capacity as owner, | ) ) ) ) | |
| | ) | |
| *Defendants.* | ) | |

### COMPLAINT[1]

Plaintiff, the People of the State of Illinois (the "State"), by and through LISA MADIGAN, Attorney General of the State of Illinois, complains against SUBURBAN EXPRESS, INC. ("Suburban Express"), ALLERTON CHARTER COACH, INC. ("Allerton Charter"), and DENNIS TOEPPEN, individually and in his official capacity as owner and agent of Suburban Express and Allerton Charter ("Defendants"), as follows:

### NATURE OF THE ACTION

1.     Dennis Toeppen and his companies Suburban Express and Allerton Charter are in the business of providing bus travel between Midwestern universities

---

[1] Certain allegations and exhibits in the State's complaint have been redacted to protect private information of Illinois consumers.

*Privileged and Confidential*
*Attorney Work Product*

and the Chicago suburbs. Over the course of several years, Toeppen through his companies has led a relentless campaign of vicious customer mistreatment, including racial and religious discrimination, compromising protected personal information, online harassment, and other unlawful and unfair business practices.

2.      Toeppen's Illinois customers are largely students at the University of Illinois at Urbana-Champaign and Illinois State University who rely on Suburban Express to travel home or to the Chicago-area airports. Toeppen and his companies have published discriminatory advertisements, excluded customers or treated them differently on the basis of national origin and/or race, imposed non-negotiable and abusive contract terms on customers, and retaliated against numerous customers who have violated those terms by criticizing Defendants online. They have also banned hundreds of customers for arbitrary, unfair and unscrupulous reasons, with a long list of hundreds they refuse to serve. They have gone so far as to file small-claims lawsuits against scores of customers, often in an inconvenient forum.

3.      Through this ongoing campaign of harassment, intimidation, and discrimination, Toeppen and his companies have violated the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, as amended by the Civil Rights Act of 1991 ("Section 1981"); the Consumer Review Protection Act, 15 U.S.C. § 45b ("Consumer Review Act"); the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*; the Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq.*; and the Illinois Human Rights Act ("Human Rights Act"), 775 ILCS 5/1 *et seq.*

*Privileged and Confidential*
*Attorney Work Product*

4.      In this action, in order to protect and compensate the People of the State for Defendants' illegal conduct, the State seeks declaratory and injunctive relief, restitution, civil penalties, damages, and costs.

## THE PARTIES

5.      The State brings this action as authorized pursuant to the Consumer Review Act, 15 U.S.C. § 45b; the Consumer Fraud Act, 815 ILCS 505/3; the Human Rights Act, 775 ILCS 5/10-104; and by the Attorney General's authority under the doctrine of *parens patriae*. The State brings this action to defend its quasi-sovereign interest in preventing present and future harms against its residents, including individuals who are, have been, or would be victims of Defendants' actions.

6.      Defendants' violations affect a substantial segment of the residents of Illinois, including direct victims and the general public, which suffers the indirect effects of discrimination along with unlawful and unfair business practices. Because the interest of the State involves preventing future harm, it is not coextensive with the interest of private individuals who have been victimized and who may seek private relief.

7.      Moreover, the Attorney General enforces the public policy of the State to secure for all of its residents freedom from discrimination against any individual because of race or national origin in connection with public accommodations. 775 ILCS 5/1-102(A). It is the declared interest of the State that all people in Illinois can maintain personal dignity, realize their full productive capacities, and further their interests, rights and privileges as residents of Illinois. 775 ILCS 5/1-102(E).

*Privileged and Confidential*
*Attorney Work Product*

8.     Defendant Suburban Express is an Illinois corporation with a business address located in Champaign, Illinois. Suburban Express is in the business of selling tickets for seats on bus and van trips between college towns in Illinois, Indiana, and Iowa and stops in the suburbs ringing Chicago. Suburban Express sells tickets to ride on vehicles under the names Suburban Express and Illini Shuttle. Suburban Express is not licensed to operate passenger bus service by the U.S. Department of Transportation or the Illinois Commerce Commission. Rather, it contracts with other entities, including Allerton Charter, to provide transportation to its customers. The president and owner of Suburban Express is Dennis Toeppen.

9.     Defendant Allerton Charter is an Illinois corporation with a business address located in Champaign, Illinois. Allerton Charter is in the business of transporting passengers to the Chicago suburbs. Allerton Charter operates as a contractor for bus and van service for Suburban Express. The president and owner of Allerton Charter is Dennis Toeppen.

10.     Defendant Dennis Toeppen is an individual living in Champaign, Illinois. At all times relevant to this Complaint, he directed and typically executed the day-to-day management of Suburban Express and Allerton Charter, including communications with customers. All conduct of Toeppen alleged herein was done individually and as authorized agent for Suburban Express and Allerton Charter.

11.     Together, Suburban Express, Allerton Charter, and Toeppen form a common enterprise. Toeppen participates directly in and has complete control over the practices of Allerton Charter and Suburban Express, and has actual knowledge

*Privileged and Confidential*
*Attorney Work Product*

of the companies' practices. Toeppen is the sole officer of both companies, which themselves have intermingled operations: buses with "Suburban Express" stamped on their sides also have "Allerton Charter" stamped on their doors. Toeppen himself has actively participated in loading and managing individual Suburban Express and Illini Shuttle bus trips that he has ostensibly chartered to his own company, Allerton Charter, to operate. Toeppen is likewise responsible for all other aspects of management of the two companies.

## JURISDICTION AND VENUE

12.    The Court has jurisdiction over the State's Section 1981 and Consumer Review Act claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction to adjudicate the State's state law claims pursuant to 28 U.S.C. § 1367, as the events, parties, transactions, and injuries that form the basis of the State's federal claims are the same or related to the events, parties, transactions, and injuries that form the basis of the State's claims arising under state law.

13.    The Court has personal jurisdiction over Defendants because each resides in the State of Illinois and transacts business inside this District.

14.    Venue is proper pursuant to 28 U.S.C. § 1391 because alleged transactions or violations from which the causes of action arose occurred inside this district.

*Privileged and Confidential*
*Attorney Work Product*

## FACTUAL BACKGROUND

15.     Toeppen began operating a private bus service based in Champaign, Illinois in 1983, transporting the students of the University of Illinois at Urbana-Champaign ("University of Illinois"). In the ensuing years, Toeppen and his companies have gone to extreme lengths to discriminate and retaliate against customers—overwhelmingly college students with little agency or recourse—based on their membership in a protected class or their lawful complaints and discussion about Toeppen's services.

### ***Discriminatory Actions and Communications***

16.     Defendants have sought to directly exclude or deny accommodations to individuals with protected characteristics on the basis of unlawful discrimination. In addition, Defendants have undertaken a marketing campaign that discriminates on the basis of race, national origin, and religion. Defendants' course of conduct has left in its wake numerous customers feeling outraged, cheated, abused, and discriminated against.

17.     Defendants have not just actively discriminated against individuals by excluding or providing different treatment to customers based on race and national origin and circulating discriminatory advertisements; they have also treated these customers unfairly and in violation of consumer protection laws. Defendants' discriminatory tactics have largely been (1) against people who appear to be Asian and/or international students from Asian countries, and (2) on the basis of religion, specifically Judaism.

*Privileged and Confidential*
*Attorney Work Product*

*Exclusion and Differential Treatment Based on Race and National Origin*

18.     Defendants have explicitly excluded from services and discriminated against customers on the basis of race or national origin. For example:

    a. Toeppen banned a customer of Asian origin from using Defendants' services when he believed the customer could not read English.

    b. Toeppen directed an employee to "not bother" responding to e-mails or phone inquiries from persons using "broken English."

19.     Defendants also intentionally directed discounts for bus rides to potential customers who did not appear to be Asian. Toeppen directed an employee to hand out coupons for Suburban Express to passengers boarding a competitor's bus, but to "not bother" handing out those coupons to passengers who look like they do not speak English well.

20.     Toeppen has banned customers from his companies' services and attacked them online on the basis of national origin.

21.     On April 5, 2013, writing to a University of Illinois employee, Toeppen indicated his motivation for this mistreatment based on national origin. He noted that "virtually all ticket ripoffs [for bus services] involve … asian students (chinese especially)," "indian students," and "students from the very high income suburbs (glencoe, Winnetka, etc)." Ex. 1.

22.     Defendants through Toeppen have created multiple suburbanexpress.com webpages dedicated to attacking and announcing bans on specific customers, sometimes citing customers' Asian origins. On one such page,

*Privileged and Confidential*
*Attorney Work Product*

Defendants have explicitly called out the customer's Chinese origin in belittling and banning the customer. This page is currently posted online as of the filing of this Complaint; it attacks the customer by name, stating that the customer is "a pushy little Chinese International student with a fragile ego" who "has been permanently banned from Suburban Express." Ex. 2. On this page, Defendants write, "If I were a guest in another country, I would certainly not act like" the customer; "I would be humble and polite." *Id.* Another currently active version of this page appears as follows:



```
All we can say is, WHAT A LITTLE WEASEL. If you're thinking of hiring        ,
we'd recommend that you think again.      , if you're going to go after people online,
expect that your anonymity may be pierced.

Some bits of information from the web and other sources:

Email Address:                      from Google
Phone Number:
```

*See* Ex. 3. On a previously posted version of the page, Defendants included a photo of a person they claimed to be the customer, wrote that the customer was "having trouble coping with the USA," and asked that the customer "please go back to your country and stay there." Ex. 4.

23.     Furthermore, in operating Suburban Express and Allerton Charter, Toeppen has harassed customers on the basis of their race or national origin:

      a.  Toeppen told passengers boarding a bus to brush up on the English language.

      b.  Toeppen asked passengers boarding a bus why they attend the University of Illinois if they cannot speak English.

*Privileged and Confidential*
*Attorney Work Product*

c.  On January 9, 2017, in a public response to a review by a customer with Chinese characters as the customer's display name on Yelp, Toeppen wrote: "Suggest you bone up on your English a little so that you don't have more problems like this here in my country." Ex. 5.

*Discriminatory Advertisements on the Basis of National Origin/Race*

24.  Defendants have engaged in repeated and ongoing blatantly discriminatory advertisements disparaging customers perceived to be from China or other Asian countries.

25.  For example, in an e-mail advertisement sent to the Suburban Express customer email list on December 2, 2017, Defendants, through Toeppen, published and circulated this text:

> Get your ticket early so that you can enjoy the Suburban Express Experience on your ride home:
>
> - Paper Tickets for FAST BOARDING -- No pointless milling around in the cold or rain!
> - Tickets Refundable until 4 hours before first trip
> - Tickets returnable for Standby Credit 10 days after trip
> - Customer-Friendly Policies
> - No Baggage Charges
> - Experienced and Efficient drivers
> - Passengers like you. You won't feel like you're in China when you're on our buses.

Ex. 6 at 1.

26.  Community reaction to the "China" portion of the advertisement was swift and overwhelmingly negative. In response, Toeppen emailed an "apology"

9

*Privileged and Confidential*
*Attorney Work Product*

stating in part: "Nearly 20% of U of I students are natives of China, and this high percentage of nonnative english [*sic*] speakers places a variety of burdens on domestic students." Ex. 7 at 1. It added: "We agree that having a healthy mixture of different cultures and ethnicities is valuable. But we're not comfortable with the idea of selling our university to the highest foreign bidder." *Id.*

27.     Toeppen sent another message to the Suburban Express email list explaining the previous two messages by noting that "many students from countries in Asia" had "abandon[ed] Suburban Express" and chosen to "ride a competing company," adding that the "Chinese exchange students" at the University of Illinois "all ride our competitor now." Ex. 8 at 2.

28.     Several individuals from China, from other Asian countries, or who identified as Asian reported in complaints to the University of Illinois and to the Office of the Illinois Attorney General that the Suburban Express advertisements made them feel unwelcome and unable to ride Suburban Express buses.

29.     Despite the ongoing community uproar over Toeppen's emailed comments, Toeppen continued the same theme in subsequent advertisements, quickly returning to publishing and circulating messages that intentionally single out racial minorities as unwelcome and unacceptable by advertising that Suburban Express passengers enjoy riding with people who look and act like them:

   a.   On February 15, 2018, Toeppen wrote to the Suburban Express email marketing list and announced that his passengers are "[p]assengers who look like you and are like you, in many respects." Ex. 9 at 2.

*Privileged and Confidential*
*Attorney Work Product*

    b.  Ten days later, on February 25, 2018, Toeppen wrote his email list again, stating that Suburban Express passengers are "[p]assengers exactly like you." Ex. 10 at 2. Over a month later, Toeppen continued to send email advertisements promising "[p]assengers like you" on Suburban Express. Ex. 11 at 4.

30.    Toeppen's discriminatory communications in December 2017 and 2018 were not the first discriminatory communications he had distributed. On September 2, 2017, Defendants through Toeppen distributed an email to the Suburban Express mailing list that singled out people of Asian origin for ridicule with the following photo and caption:



**Bowing Not Required**

One final note. We're not sure how the rumor got started, but it is not actually necessary to bow before boarding our buses. :-)

*Privileged and Confidential*
*Attorney Work Product*

Ex. 12 at 6. Toeppen's choice to end this caption with ":-)," a smiley-face emoticon, implied sarcasm and derision.

31.     Similar communications have also appeared on campuses Defendants serve. In the Fall of 2013, Suburban Express put up Korean, Chinese, and Japanese posters around university campuses where it seeks student customers; the posters simply said "GO HOME" or its equivalent. *See, e.g.*, Ex. 13.

32.     As a backdrop to these statements, Toeppen's email communications concerning the operation of Suburban Express confirm his intent to discriminate:

    a.  Contacting a contractor via email on March 12, 2016 about bus scheduling, Toeppen wrote that based on ridership on bus trips scheduled for early mornings, he had learned that "the early bus gets the asian." Ex. 14.

    b.  Writing to a contractor via email on May 29, 2017, Toeppen discussed the boarding practices of one of his competitors in the bus business: "anyhow, it was fun to watch these idiots board. some indian or asian would come up with some crazy name. the hood rat driving the bus would struggle to understand the name and find it, but then give up and just let the person on. this got around." Ex. 15.

    c.  Toeppen at other times disparaged Chinese and Indian people as dishonest users of his companies' services. On March 25, 2016, Toeppen wrote to an acquaintance that "many chinese international students,

12

*Privileged and Confidential*
*Attorney Work Product*

who were accustomed to cheating the competitor, tried and failed to cheat my company." Ex. 16.

33.    Toeppen has also documented his distaste for international students on video. In 2017, Toeppen created a video apparently intended to be a guided tour of the Illinois Street Residence Halls (ISR), a University of Illinois undergraduate dormitory. During the video, posted to Toeppen's public YouTube account, Toeppen comments, "English is no longer spoken at ISR. The only languages here are Hindi, Korean, Chinese, maybe some Japanese." He then added, in a tone intended to mock accents of people of Asian origin, "No Engrish."

*Discrimination on the Basis of Religion*

34.    Defendants have intentionally banned purchases from customers with billing addresses in areas with significant Jewish populations in the northern suburbs of Chicago. Multiple individuals with addresses in those areas have attempted to purchase tickets online from Suburban Express, only to be greeted with a message stating that Suburban Express does not wish to do business with customers in the individual's zip code.

35.    Individuals who complained about Suburban Express's policy as anti-Semitic have been banned from purchasing bus tickets from Suburban Express.

36.    Toeppen's email communications, sent through accounts he uses to conduct Suburban Express and Allerton Charter business, confirm Defendants' intent to discriminate against Jewish individuals by singling out Northern Chicago suburbs as having Jewish residents and thus open for ridicule:

13

*Privileged and Confidential*
*Attorney Work Product*

a. In referring to a bus run from Champaign, Illinois to the northern suburbs of Chicago, where there are several communities with significant Jewish populations, on September 24, 2017, Toeppen twice referred to the bus run as "a trip to the land of no ham," an apparent reference to Jewish Kosher dining. Ex. 17.

b. On April 20, 2017, Toeppen told an acquaintance with the email name "Doreen @ Suburban Express" the following: "cat moving hq to deerfield. i guess they're going kosher," an apparent reference to the impending move of Caterpillar Inc.'s headquarters from Peoria to Deerfield, Illinois, a village with a significant Jewish population. Ex. 18.

### *Unfair and Retaliatory Treatment of Customers*

37.     In addition to these discriminatory actions, Toeppen and his companies' illegal mistreatment of customers has spanned several years and taken multiple forms, including in contract terms, in person, online, and in court pleadings.

### *Online Retaliation and Harassment*

38.     Defendants' unfair and unscrupulous treatment of customers has included attacking customers by name on the internet. Defendants have maintained individual webpages under the Suburban Express domain (suburbanexpress.com) and others that Toeppen operates and maintains under the Suburban Express name. On these webpages, Defendants identify specific customers by name and write derogatory comments, sometimes in great detail, about the named customers.

*Privileged and Confidential*
*Attorney Work Product*

39.     For example, through Toeppen, Defendants have referred to customers on these webpages as, *inter alia*, an "immature little asshole[ ] with no discernable redeeming qualities"; a "dishonest little prick" with a father described as "the piece of shit whose sperm made" the customer; and, as noted above in paragraph 22, "a pushy little Chinese International student with a fragile ego." Exs. 19, 20; Ex. 2. Upon creating pages like these, Toeppen has at times emailed their subjects to inform them that the pages have been published.

40.     In one instance, Defendants took issue with a customer's apparent Yelp review of Suburban Express concerning the customer's need to transport multiple wheelchairs as luggage on a Suburban Express bus. On suburbanexpress.com, Defendants, through Toeppen, identified this customer by name and wrote that the customer's request was "simply unreasonable" and described the customer as "erratic" and "a legend here at Suburban Express for your lunacy," questioning whether the customer was "living in a mental hospital." Ex. 21 at 1. Defendants also posted a photo of what they described as the customer's home, noting "all the crap in your yard." *Id*. Defendants noted that the customer had accused Defendants of stalking, which Defendants wrote was a "feighned [*sic*] fear." *Id*. at 2. Defendants closed out this narrative by threatening to soon post "[r]ecordings of phone calls from this lunatic, if they are still stored in our phone system." *Id*.

41.     On another webpage, Defendants, through Toeppen, claimed a customer reversed a credit card charge from Suburban Express. Defendants created a webpage that disclosed the identity of this customer, warning "[l]aw school admissions

*Privileged and Confidential*
*Attorney Work Product*

personnel" to "steer clear of this spoiled child," as the customer was not "well-adjusted" or "mature" or "ready for the real world." Ex. 22. Defendants warned those considering business transactions with the customer "to accept cash only" but advised "inspect[ing] any cash [the customer] gives you, as it may be counterfeit." *Id.* Defendants also posted a link to an Illinois Corporation File Detail Report for an entity rated "not good standing," which the report indicated was run by a person with the same last name as the "spoiled" customer. *Id.* About this document, Defendants wrote, "Looks like [the customer's] dad has some problems." *Id.*

42. On yet another webpage, Defendants, through Toeppen, addressed a customer's Yelp review of Suburban Express as "surely a fabrication" and "nonsensical," then accused the customer of working with a "paid editor who works in PR" to spread lies about Suburban Express online. Ex. 23. Defendants posted a link (which they called "Growing up in the Desert") to a Google Map of what "seems to be [the customer's] childhood home," asking "What happened here?" and noting that the customer's "alter ego online seems to answer quickly" when asked about "mental health issues." *Id.* In response to the customer's comments about Defendants on the website Reddit, Defendants wrote an email to the customer (see below) seeking to use the attack webpage to get the customer to remove what Defendants perceived to be the customer's online comments about Suburban Express:

*Privileged and Confidential*
*Attorney Work Product*

> Here's the deal, ███████ and ███████.
>
> We're bored with you and your **little weasel** online friends, and we're offering you a deal.
>
> **If you make the following changes by >>3/30/15<<:**
>
> - Remove anti-Suburban Express header note from U of I "subreddit"
> - Remove the childish Suburban Express wiki
> - Delete your contributions to the Suburban Express wikipedia talk secion
>
> We will:
>
> - Remove the ███████ page from our website
> - Remove the ███████ page from our website
>
> There will be no further communication on this matter. If you take action, we will. End of story.
>
> Best,
> Suburban Express

Ex. 24. The webpage attacking the customer remains online as of the filing of this Complaint.

43.     Through     Toeppen,     Defendants     also     published     another suburbanexpress.com webpage unfairly and oppressively referring to a past Suburban Express customer in a derogatory way, as follows:

> Suburban Express defends itself against online attacks by slimy little piece of shit ███████ from ███████
>
> Have you ever wanted to do business with a dishonest little scumbag who is willing to lie and cheat and break any and every agreement you make with him? If so, ███████ may be your man.

Ex. 25. Defendants proceed to question whether the customer's parents should be blamed for "bad parenting" of the customer, and note that the customer's negative Yelp review of Suburban Express prompted Suburban Express to file a small-claims lawsuit against the customer "for the money [the customer] owes us." *Id.* Defendants concluded the page by informing those "thinking of hiring" the customer that they

*Privileged and Confidential*
*Attorney Work Product*

"[d]o so at your own peril," but not before including the customer's email address,

phone number, and home address. *Id.*

44.    In addition to these webpages attacking individual customers,

Defendants have maintained a page on the Suburban Express site called "The Page

of Shame." Ex. 26 (see image below).



45.    The entry for each customer on this "Page of Shame" list has included

the customer's name, address, phone number, and email address. *Id.* The page has

also included categories of "fare cheaters" (noting that "[y]ou should avoid engaging

in business transactions with these people, in our opinion"), with the same categories

of contact information listed for each entrant (*id.* at 4), as well as "Banned" customers

(*id.* at 5). The reasons Defendants have indicated for banning specific customers have

included that a customer was "mentally unstable based on [the customer's] activities

[on] reddit" and that another was "morally and ethically challenged, in our opinion."

*Id.*

*Privileged and Confidential*
*Attorney Work Product*

*Unfair Retaliation Through Customer Bans*

46.     Defendants maintain a far longer business-record "List of Current Banned Customers" in addition to the names they have published online. Along with banned customers' names and the date and time each customer was banned, the list explicitly states the reasons Defendants have barred hundreds of specific individuals from using their services.

47.     Defendants have banned scores of customers for minor or arbitrary infractions, including reasons such as "[c]an't figure out how to ride the bus," "too whiney," "too needy," and "too stupid to ride our bus." *See* Ex. 27 at 2, 5, 13, 9. Defendants have also cited unfair, subjective reasons when banning customers such as: "sounds like a bitch," "psycho lesbian," "crazy screaming wench," "stupid bitch," "crazy fucking bitch," and "total cunt." *See id.* at 2, 10, 13, 14, 14, 15.



*Privileged and Confidential*
*Attorney Work Product*

48.    In addition, this internal list shows that Defendants, at Toeppen's direction, have banned and penalized at least 60 customers from using their services for discussing Toeppen and/or his companies in online forums such as Yelp, Google, Facebook, and Reddit. The reasons Defendants have provided on the list in this area include "childish, defamatory yelp review," "negative yelp review and nutbag customer," "negative review. fuck you," "facebook post," "google review kill this person if you want," "permanently banned for reddit posts," and "[n]egative Google review…go to hell." *See id.* at 3, 4, 6, 7, 10, 12, 14.

### *Abusive, Illegal Contract Terms and Retaliation for Contract Violations*

49.    In addition to banning customers for talking about them in online forums, Defendants have sought to prevent thousands of customers from doing so through non-negotiable form contracts. These form contracts, to which customers are required to agree before purchasing a ticket from Suburban Express, explicitly restrict customers' ability to discuss Defendants on the internet in violation of federal and state law.

50.    To facilitate ticket purchasing, Suburban Express offers bus and van tickets for purchase online via suburbanexpress.com, busline.com, and other websites maintained and operated by Defendants. Customers may not proceed to provide payment information and purchase a ticket until they have agreed to these terms by clicking a box. There is no meaningful opportunity for customers to offer alternate terms or negotiate these contracts with Defendants before purchasing a ticket. *See* Ex. 28.

*Privileged and Confidential*
*Attorney Work Product*

51.     Since at least January 2017 and as of the date of filing this Complaint, Toeppen has included a term on these non-negotiable Suburban Express form contracts that begins by telling customers, "We value your feedback. Please contact us regarding any service failures or other issues." *Id.* at 2. The same paragraph then proceeds to warn customers: "Online disparagement will not resolve any problem you may have, and it may lead us to refuse your future business. If we refuse your future business, you will receive no advance notice. Driver will simply turn you away at the bus." *Id.*

52.     This form contract term requires customers to consent not only to being banned from service without notice for "disparaging" Suburban Express online, but also to paying for future bus tickets that cannot be used. Toeppen and Suburban Express require customers to purchase tickets in advance, yet these banned customers are told that they will be "turn[ed] ... away at the bus" even after paying for a ticket.

53.     This form contract language is not simply an idle threat; it is an active prohibition. As noted above, see Paragraph 48, Defendants aggressively penalize individuals who post reviews criticizing Defendants on Google, Yelp, Reddit, and other forums by banning them from future services.

54.     Moreover, Defendants often publicly respond to critical online reviews in an oppressive manner that plainly attempts to discourage further negative commentary on the company by seeking to personally humiliate those who complain about their services. Examples of these public responses, which Toeppen directed at

*Privileged and Confidential*
*Attorney Work Product*

Defendants' reviewers, include telling a reviewer he is "sitting in your underwear in the dark in your parents' basement. We hope things turn around for you soon." Group Ex. 29 at 2. Other responses told reviewers, "Only an idiot would try to type in a gnarly 24 digit confirmation code when it can easily be cut and pasted from the confirmation email. The problem you describe is of your own making"; "[W]e have a judgment against you. Have you paid the amount the court ordered you to pay?"; and called one online post an "extremely long-winded, childish review[ ] from an entitled young girl" who was "being sued by Suburban Express." *Id.* at 25, 45–46, 53.

### ***Publication of Customer Personal Information***

55.     In addition to aggressively attacking customers online, Suburban Express, at Toeppen's direction, has violated state law by publicly displaying customers' sensitive personal information.

56.     As one of its business practices, Suburban Express has filed scores of lawsuits in an inconvenient Illinois forum against customers. Many of Suburban Express's lawsuits against customers concern a customer's attempt to reverse charges for a bus ticket purchased from Suburban Express. Some of these lawsuits have included ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████.

57.     The failure to redact customers' ██████████████ information was not inadvertent. In addition to ████████████████████████, Suburban Express, through Toeppen, also █████████████████████████████████████

*Privileged and Confidential*
*Attorney Work Product*

████████████████████████████████████████████████████████

████████████████████████████████████.

58.    After  filing  complaints  against  customers  ████████████████

████████, Toeppen ████████████████████████████████████

████████████  ████████████████████████:



Ex. 30. The ████████████████████████████████ images ████████

████████████████████████████████████████ are laden with

confidential  personal  information.  ████████████████████████

████████████████████████████████████████████████

████████████████████████ without any redaction, along with ████████

████████████████████████████.

59.    There is no indication Toeppen, Suburban Express, or Allerton Charter

notified any of the individuals named in these lawsuits ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

*Privileged and Confidential*
*Attorney Work Product*

## COUNT I: RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
### (*As against all Defendants*)

60.     The State re-alleges and incorporates by reference the allegations in Paragraphs 1 through 59.

61.     Under 42 U.S.C. § 1981, all persons in the United States have the same right to make and enforce contracts, which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b). The law protects these rights against impairment by nongovernmental discrimination. *Id.* § 1981(c).

62.     Defendants intentionally discriminate against people of Asian and Jewish origin.

63.     By directing discriminatory advertisements against people of Asian origin, Defendants deprived people of Asian origin of the ability to make and enforce contracts, including the full and fair enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

64.     By pervasively and persistently singling out people of Asian origin for harassment, retaliation, and ridicule—both on the Internet and in person— Defendants deprived people of Asian origin of the ability to make and enforce contracts, including the full and fair enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

*Privileged and Confidential*
*Attorney Work Product*

65. By directing employees to not provide coupons or responses to people of Asian origin, Defendants deprived people of Asian origin of the ability to make and enforce contracts, including the full and fair enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

66. By refusing to accept payment from credit cards with billing addresses in zip codes with high Jewish populations, and retaliating against customers who complain about this refusal, Defendants deprived Jewish customers of the ability to make and enforce contracts on the basis of their Jewish origin, including the full and fair enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

67. Defendants' conduct was purposefully discriminatory. Defendants were aware that their actions actively discriminated against individuals of specific races and acted with malice or reckless indifference toward those individuals' federally protected rights.

68. The Attorney General of the State of Illinois asserts that the interests of the residents of the State have been threatened and adversely affected by Defendants' engagement in unlawful intentional discrimination as prohibited by 42 U.S.C. § 1981. The Attorney General of the State of Illinois therefore asserts this claim on behalf of the People of the State of Illinois pursuant to its *parens patriae* authority.

*Privileged and Confidential*
*Attorney Work Product*

## COUNT II: VIOLATION OF THE CONSUMER REVIEW PROTECTION STATUTE, 15 U.S.C. § 45b
### *(As against Suburban Express)*

69.     The State re-alleges and incorporates by reference the allegations in Paragraphs 1 through 59.

70.     The Consumer Review Protection statute deems any provision of a form contract void if it prohibits or restricts the ability of an individual who is a party to the form contract to engage in a covered communication or imposes a penalty or fee against the individual for engaging in the covered communication. 15 U.S.C. § 45b(1)(A)–(B).

71.     The statute defines "form contract" as a contract with standardized terms that is "used by a person in the course of selling or leasing the person's goods or services" and is "imposed on an individual without a meaningful opportunity for such individual to negotiate the standardized terms." 15 U.S.C. § 45b(a)(3)(A)(i)–(ii).

72.     The statute defines "covered communication" as "a written, oral, or pictorial review, performance assessment of, or other similar analysis of, including by electronic means, the goods, services, or conduct of a person by an individual who is party to a form contract with respect to which such person is also a party." 15 U.S.C. § 45b(a)(2).

73.     Suburban Express has offered a "form contract" in the course of selling its services to customers without a meaningful opportunity for the customers to negotiate the standardized terms therein. Suburban Express's customers seeking to purchase a ticket for bus travel online are required to agree to standardized terms by

*Privileged and Confidential*
*Attorney Work Product*

clicking a box underneath the terms on a web page without any ability to negotiate the terms.

74.     The form contract Suburban Express has offered includes a provision warning customers not to engage in covered communications by restricting "[o]nline disparagement" of Suburban Express, stating that customers who engage in such disparagement may be banned from using the company and may find that future ticket purchases are unusable. This term restricts the ability of customers as parties to this contract to comment on Suburban Express's services and conduct.

75.     Suburban Express subsequently penalizes customers who engage in covered communications of this sort by banning them from using Suburban Express services and in some cases subjecting them to harassment and ridicule on Suburban Express web pages.

76.     Suburban Express has offered, and entered into, thousands of form contracts with customers containing this provision with knowledge fairly implied on the basis of the circumstances described herein that its practices are unfair and prohibited by law.

77.     The interests of the residents of the State have been threatened and adversely affected by Suburban Express's offering the form contract provisions described in this Complaint. The Attorney General of the State of Illinois therefore asserts this claim on behalf of the People of the State of Illinois pursuant to its *parens patriae* authority as authorized by statute. *See* 15 U.S.C. § 45b(e)(1).

*Privileged and Confidential*
*Attorney Work Product*

78.     The Attorney General of the State of Illinois provides the required notice of this action to the Federal Trade Commission as required by statute. *See* 15 U.S.C. § 45b(e)(2)(A).

## COUNT III: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2
### *(As against all defendants)*

79.     The State re-alleges and incorporates by reference the allegations in Paragraphs 1 to 78.

80.     While engaged in trade or commerce, Defendants committed acts or practices declared unlawful under Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

a. Publishing and maintaining webpages that contain personal and disproportionate attacks upon consumers;

b. Banning consumers from using Defendants' services for arbitrary and discriminatory reasons;

c. Banning consumers from using Defendants' services for authoring reviews of Defendants' services;

d. Publishing the personal information of consumers Defendants have sued; and

e. Failing to notify consumers that Defendants had published their personal information.

81.     Defendants' actions (1) offend public policy; (2) cause substantial injury to consumers; and (3) have been immoral, unethical, and oppressive. These actions

*Privileged and Confidential*
*Attorney Work Product*

violate a variety of consumer protection and civil rights laws, as described herein, thus demonstrating violations of public policy. Moreover, certain of Defendants' webpages attacking consumers are defamatory *per se*, given that they impute an inability to perform or want of integrity in performing employment duties and/or impute a lack of ability or otherwise prejudice the consumers in their professions or prospective professions. Specifically, Defendants have announced that employers should not hire certain customers because they are liars and cheaters and unfit for employment. These actions have caused significant distress and financial harm to consumers across Illinois.

82. The Attorney General of the State of Illinois brings this claim on behalf of the People of the State of Illinois pursuant to its authority under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a).

### COUNT IV: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2TTT (*As against Suburban Express*)

83. The State re-alleges and incorporates by reference the allegations in Paragraphs 1 through 59.

84. Section 2TTT of the Illinois Consumer Fraud Act, P.A. 100-240, requires that contracts or proposed contracts for sale or lease of consumer merchandise or services "not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or the employees or agents of the seller or lessor or concerning the merchandise or services." 815 ILCS 505/2TTT(a).

*Privileged and Confidential*
*Attorney Work Product*

85.     Section 2TTT of the Consumer Fraud Act deems it "an unlawful practice to threaten or to seek to enforce a provision made unlawful under this Section or to otherwise penalize a consumer for making any statement protected under this Section." 815 ILCS 505/2TTT(b).

86.     Suburban Express has sought to enforce a provision of a contract that requires customers to agree to its terms prior to purchasing tickets. The provision threatens customers that specific statements about Suburban Express services may lead to a ban from using those services, including the prospect of purchasing unusable tickets.

87.     In addition, Suburban Express has sought to enforce this provision and penalize customers for making protected statements, as it has banned dozens of customers for their statements in online forums about Suburban Express as well as publicly attacked customers in Internet postings for making these statements.

88.     The Attorney General of the State of Illinois brings this claim on behalf of the People of the State of Illinois pursuant to its authority under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a).

## COUNT V: VIOLATIONS OF THE ILLINOIS PERSONAL INFORMATION PROTECTION ACT, 815 ILCS 530/10, 530/20, AND 530/45
### (*As against Suburban Express and Toeppen*)

89.     The State re-alleges and incorporates by reference the allegations in Paragraphs 1 through 59.

90.     The Personal Information Protection Act concerns the actions of data collectors, defined as any entity "that, for any purpose, handles, collects,

*Privileged and Confidential*
*Attorney Work Product*

disseminates, or otherwise deals with nonpublic personal information." 815 ILCS 530/5. Personal information includes an individual's first name or first initial and last name in combination with an unencrypted or unredacted account number or credit or debit card number. *Id.*

91. Under the Personal Information Protection Act, data collectors that maintain or store personal information concerning Illinois residents must "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 830 ILCS 530/45(a).

92. If any breach of the security of the data collector's system data concerning Illinois residents occurs, the Personal Information Protection Act requires the data collector to provide detailed notice to those residents at no charge and in "the most expedient time possible and without unreasonable delay." 815 ILCS 530/10(a).

93. Toeppen and Suburban Express handle personal information that they receive from individuals, including Illinois residents, and their banks or other financial servicers, including but not limited to first and last names, mailing addresses, email addresses, bank account numbers, and credit or debit card numbers.

94. Toeppen and Suburban Express breached the security of the computerized data containing personal information of these individuals by posting ██ ████████████████████████, compromising the security and confidentiality of this personal information in a manner that these individuals did not authorize.

95.     In publishing the personal information of Illinois residents ███████ ████████████████████████████████████████████████████████, Toeppen and Suburban Express have failed to implement and maintain reasonable security measures to protect these records from unauthorized access, acquisition, destruction, use, modification, and disclosure.

96.     Toeppen and Suburban Express's failure to implement and maintain reasonable security manners to protect these records constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act per 815 ILCS 530/20 and 530/45.

97.     Toeppen and Suburban Express failed to notify these individuals in any manner that there has been a breach of the security of their system data, which Toeppen and Suburban Express themselves caused.

98.     Toeppen and Suburban Express further failed to notify these individuals in any manner that their personal information was reasonably believed to have been acquired by an unauthorized person—█████████████████████████████████ ██████████████████████████████████████.

99.     Toeppen and Suburban Express's failure to notify these individuals that there has been a breach of the security of their system data constitutes an unlawful practice under the Consumer Fraud Act per 815 ILCS 530/20 and 530/10.

100.    The Attorney General of the State of Illinois brings this claim on behalf of the People of the State of Illinois pursuant to its authority under the Consumer Fraud Act, 815 ILCS 505/7(a).

*Privileged and Confidential*
*Attorney Work Product*

## COUNT VI: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT,
## 775 ILCS 5/5-102
### (*As against all Defendants*)

101.    The State re-alleges and incorporates by reference the allegations in Paragraphs 1 through 100.

102.    The Human Rights Act deems it a civil rights violation for any person to deny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation. 775 ILCS 5/5-102(A).

103.    The Human Rights Act further deems it a civil rights violation for any operator of a place of public accommodation to directly or indirectly publish, circulate, display or mail any written communication which the operator knows is to the effect that any of the facilities of the place of public accommodation will be denied to any person or that any person is unwelcome, objectionable, or unacceptable because of unlawful discrimination. 775 ILCS 5/5-102(B).

104.    Under the Human Rights Act, a "place of public accommodation" includes but is not limited to a public conveyance on air, water, or land, as well as sales establishments and service establishments. 775 ILCS 5/5-101(A)(5)–(7). The "operator" of such a place of public accommodation is "any owner, lessee, proprietor, manager, superintendent, agent, or occupant of a place of public accommodation or an employee of any such person or persons." 775 ILCS 5/5-101(B).

105.    Defendants are places of public accommodation or operators of places of public accommodation as defined by the Human Rights Act, 775 ILCS 5/5-101(A). Defendant Suburban Express is a "sales ... establishment." 775 ILCS 5/5-101(A)(5).

*Privileged and Confidential*
*Attorney Work Product*

Defendant Allerton Charter runs buses that are "public conveyances on ... land." Defendant Toeppen is an "owner," "proprietor," "manager," and "agent" of these places of public accommodation. 775 ILCS 5/5-101(B).

106.    Defendants discriminate on the basis of race and national origin against people of Asian origin, including Chinese, by publishing and circulating written communications that Defendants know are to the effect that any of Defendants' facilities, goods, and services will be denied to people of Asian origin including Chinese, or that people of Asian origin including Chinese are unwelcome, objectionable, and unacceptable.

107.    Defendants discriminate on the basis of race and national origin against people of Asian origin, including Chinese, by denying or refusing them the full and equal enjoyment of the facilities, goods, and services of places of public accommodation.

108.    Defendants discriminate against people of the Jewish faith and Jewish origin by refusing certain communities of Jewish people the ability to purchase tickets from Defendants.

109.    The actions of Defendants are in violation of the Human Rights Act, 775 ILCS 5/5-102, and constitute unlawful discrimination through communications to people of Chinese and Asian origin and Jewish faith that they are unwelcome, objectionable, and unacceptable.

WHEREFORE, the State is entitled to, and requests, the following relief against Defendants:

*Privileged and Confidential*
*Attorney Work Product*

### *Declaratory Relief*

A.    As to Count I, a finding that Defendants, and each of them, have engaged in and are engaging in acts or practices that constitute race and national origin discrimination in violation of 42 U.S.C. § 1981;

B.    As to Count II, a finding that Suburban Express engaged in and is engaging in acts or practices that constitute violations of the Consumer Review Protection statute, 15 U.S.C. § 45b;

C.    As to Count III, a finding that Defendants, and each of them, have engaged in and are engaging in acts or practices that constitute violations of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2;

D.    As to Count IV, a finding that Suburban Express engaged in and is engaging in acts or practices that constitute violations of Section 2TTT of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2TTT, P.A. 100-240;

E.    As to Count V, a finding that Toeppen and Suburban Express have engaged in and are engaging in acts or practices that constitute violations of Sections 10, 20, and 45 of the Illinois Personal Information Privacy Act, 815 ILCS 530/10, 530/20, and 530/45;

F.    As to Count VI, a finding that Defendants, and each of them, have engaged in and are engaging in acts or practices that violate Section 5-102 of the Human Rights Act, 775 ILCS 5/5-102;

*Privileged and Confidential*
*Attorney Work Product*

*Injunctive Relief*

G.   As to Counts I and VI, an order enjoining Defendants from engaging in the civil rights violations alleged herein;

H.   As to Count II, an order enjoining Suburban Express from engaging in the violations of the Consumer Review Protection statute described in this Complaint;

I.   As to Count III, an order enjoining Defendants from advertising, offering, or selling transportation services to consumers in or from the State of Illinois;

J.   As to Count III, an order suspending or forfeiting Defendants' licenses, charters, certificates, or other evidence of authority to do business in the State of Illinois as provided by Section 7 of the Illinois Consumer Fraud and Deceptive Practices Act;

K.   As to Counts III and IV, an order rescinding all contracts affected by Suburban Express's unlawful acts and practices;

L.   As to Count IV, an order enjoining Suburban Express from engaging in the violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2TTT, P.A. 100-240;

M.   As to Count V, an order enjoining Toeppen and Suburban Express from engaging in all violations of the Personal Information Protection Act alleged in this Complaint;

*Privileged and Confidential*
*Attorney Work Product*

N.      As to Count V, an order requiring Toeppen and Suburban Express to remove all records containing personal information of consumers from public view, including ███████████████████████, and implement and maintain reasonable security measures to protect those records and all other records containing personal information as defined in 815 ILCS 5 from unauthorized access, acquisition, destruction, use, modification, or disclosure;

O.      As to Count V, an order requiring Toeppen and Suburban Express to notify all Illinois residents whose personal information they have breached at no charge that there has been a breach of the security of the system data following discovery or notification of the breach in compliance with Section 10 of the Illinois Personal Information Protection Act, 815 ILCS 530/10;

P.      As to Counts III, IV, and V, an order requiring Defendants, and each of them, to make restitution to all consumers affected by Defendants' unlawful acts and practices;

*Monetary Relief*

Q.      As to Count I, an order requiring Defendants to pay compensatory and punitive damages;

R.      As to Count I, an order requiring Defendants to pay reasonable attorney's fees and costs for the prosecution and investigation of this action;

*Privileged and Confidential*
*Attorney Work Product*

S.      As to Count II, an order requiring Suburban Express to pay a civil penalty of $10,000 per violation of the Consumer Review Protection Statute, per 15 U.S.C. § 45(m)(1)(A);

T.      As to Counts III, IV, and V, an order requiring Defendants, and each of them, to pay up to $50,000 per deceptive act or unfair practice and an additional amount of $50,000 for each act or practice found to have been committed with intent to defraud, as provided in Section 7 of the Consumer Fraud Act, 815 ILCS 505/7;

U.      As to Counts III, IV, and V, an order requiring Defendants, and each of them, to pay $10,000 for each offense committed against a person 65 years of age or older as provided by Section 7 of the Illinois Consumer Fraud and Deceptive Practices Act;

V.      As to Count VI, pursuant to 775 ILCS 5/10-104(B) of the Human Rights Act, for each act of unlawful discrimination, an order requiring Defendants, and each of them, to pay a civil penalty not exceeding $10,000;

W.      A judgment against the Defendants, and each of them, consistent with the Court's various findings and orders; and

X.      Any other legal or equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

*Privileged and Confidential*
*Attorney Work Product*

Respectfully Submitted,

PEOPLE OF THE STATE OF ILLINOIS,
by LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS


By:     /s/ Jeff VanDam
        Assistant Attorney General
        Civil Rights Bureau

LISA MADIGAN
Attorney General of Illinois

Jeanne Witherspoon (ARDC #6194219)
Matthew V. Chimienti (ARDC #6312531)
Elizabeth M. Hady (ARDC #6316542)
Alison V. Hill (ARDC #6327029)
Jeff VanDam (ARDC #6314182)
Thomas J. Verticchio (ARDC #6190501)
*Assistant Attorneys General*
Civil Rights & Special Litigation Bureaus
100 W. Randolph Street, 11th floor
Chicago, IL 60601
Tel.: (312) 814-1188
*tverticchio@atg.state.il.us*
*mchimienti@atg.state.il.us*
*ehady@atg.state.il.us*
*ahill@atg.state.il.us*
*jvandam@atg.state.il.us*