# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEODE OF THE STATE OF ILLINOIS )<br>ex rel. KWAME RAOUL, Attorney General )<br>of the State of Illinois, )<br>  )<br>        Plaintiff, )<br>  )<br>        v. )<br>  )<br>SUBURBAN EXPRESS INC., et al., )<br>  )<br>        Defendants. ) | No. 18-cv-02861<br><br>Judge Andrea R. Wood |

## ORDER

Pursuant to Fed. R. Civ. P. 25(d), the Clerk is directed to substitute Kwame Raoul, Attorney General of the State of Illinois, as Plaintiff in place of Lisa Madigan. Plaintiff's motion to enforce consent decree [99] is denied. Furthermore, the additional miscellaneous relief requested in Plaintiff's response to Defendant Toeppen's May 7, 2019 filing and motion for miscellaneous relief [117] is denied in light of the discussions on the record at the court hearings on 5/23/2029, 8/27/2019, 10/3/2019, and 11/21/2019. In addition, for docket administration purposes, Plaintiff's motions for leave to file documents under seal, [102] and [108], are granted. See the accompanying Statement for details.

## STATEMENT

The Attorney General of the State of Illinois, Kwame Raoul, on behalf of the People of the State of Illinois ("OAG"), initiated this lawsuit against Defendants Suburban Express Inc. ("Suburban Express"), Allerton Charter Coach, Inc. ("Allerton Charter"), and Dennis Toeppen, alleging violations of federal and state law, including the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.* Toeppen was the owner of two bus companies, Suburban Express and Allerton Charter, that provided transportation between the Chicago area and certain college towns, including Urbana-Champaign, Illinois. The OAG alleged that Defendants discriminated against customers on the basis of their race, ethnicity, and religion. It further alleged that Toeppen engaged in a campaign of online harassment and retaliation against customers that gave the bus companies negative reviews or otherwise criticized them. After months of negotiations, the parties ultimately agreed to a consent decree that this Court entered on April 9, 2019. (Dkt. No. 95.) The OAG now seeks to hold Defendants accountable for multiple alleged violations of the consent decree. (Dkt. No. 99.)

**I.**

In its original motion, the OAG pointed to the following actions taken by Defendants, specifically Toeppen, that the OAG claims violated the consent decree.

First, the OAG contends that Toeppen violated the consent decree's prohibition against penalizing customers based solely on their online comments immediately after its entry when he posted a webpage that attacked a customer who made negative comments online about Suburban Express. The webpage showed an address of the customer's childhood home and questioned the person's mental health.

Second, the OAG claims that Toeppen violated the requirement in the consent decree that Defendants not engage in communications that they "know are to the effect that their services will be denied to any person or that any person is unwelcome, objectionable, or unacceptable because of race, national origin, or religion." (Consent Decree ¶ 4(a)(iii).) Specifically, in the same website described above, Toeppen attacked an individual of Asian origin and compared the individual to a prominent Asian-American activist.

Third, the OAG stated that Toeppen failed to abide by the consent decree's requirement that he post anti-discrimination policies on the main page of any website associated with his bus companies. Shortly after the OAG filed its motion, Toeppen posted the required anti-discrimination policies on Suburban Express's website but that language was preceded by his own statement that "Suburban Express is required to display the below paragraph as a result of a recent agreement with hypocritical extortionist Illinois politician Kwame Raoul."

After this Court ordered Defendants to come into compliance with the consent decree by April 24, 2019, Toeppen removed several of the offending webpages and commentary along with the disparaging introduction to the anti-discrimination language. Nonetheless, the OAG submitted a supplemental filing in support of its motion providing additional evidence that Defendants were continuing to violate the requirements of the consent decree. The OAG pointed to Toeppen's statement to a reporter that the OAG's "lawsuit had a great deal of MSG sprinkled on it." Given that the present lawsuit predominantly focused on Defendants' discrimination against individuals of Asian ethnicity and national origin, the OAG claimed that Toeppen made an objectionable statement by referencing MSG—a seasoning often used in Asian foods. In addition, the OAG contended that Toeppen reposted old websites that attacked customers, including one that called an individual "a pushy little Chinese engineering student with a fragile ego." And although Toeppen claimed he had posted anti-discrimination language on Suburban Express and Allerton Charter's websites, the OAG claimed the website for Allerton Charter simply stated that "[t]his website no longer exists," even though Toeppen had not actually removed the website. The OAG asserted that so long as Toeppen maintained a website at the listed address, he must post anti-discrimination policy language on the page. Finally, the OAG accused Toeppen of making misrepresentations to this Court when he claimed that he was unable to undertake compliance activities between April 1 and April 6, 2019 because he was traveling, yet his travel did not prevent Toeppen from engaging in online commentary concerning the consent decree and the OAG's press release announcing it.

Following the OAG's supplemental filing, Toeppen submitted a response in which he disputed that he maintained any "attack" pages, characterizing them instead as "response" pages. He further claimed that the pages were not penalizing any critics but instead called out individuals that he believed had "cheated" the company. As to the "pushy little Chinese engineering student" comment, Toeppen claimed that the use of the word "Chinese" was accidentally left unredacted and he had since corrected the error. Further, Toeppen claimed that he posted anti-discrimination policies on all websites that Defendants host but insisted that he was not required to post such language on websites that are inactive or no longer exist.

Shortly thereafter, Toeppen submitted another filing to advise the Court that both Suburban Express and Allerton Charter were ceasing operations and their websites would be taken down. Consequently, he expressed his belief that the consent decree was now largely moot. The OAG disagreed with Toeppen's contention that the consent decree was moot, however. Instead, the OAG asserted that Toeppen remained individually bound by the terms of the consent decree for its entire three-year term. Moreover, it noted that Suburban Express and Allerton Charter had not formally dissolved under Illinois law and even after they dissolved, they would remain subject to the consent decree's post-dissolution provisions. Thus, the OAG refused to withdraw the present motion to enforce the consent decree.

## II.

The OAG has brought this motion to enforce the consent decree as a result of Defendants' several violations of its provisions and seeks entry of a monetary judgment against Defendants in the amount of $20,000. "A consent decree, while contractual in nature, is enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *United States v. Krilich*, 303 F.3d 784, 789 (7th Cir. 2002). Nonetheless, "[f]or purposes of enforcement, the Supreme Court has held that consent decrees must be construed basically as contracts." *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 834 F. Supp. 264, 266 (N.D. Ill. 1993) (citing *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 (1975)). Thus, where a decree is unambiguous, "the scope of a consent decree must be discerned with its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1038 (7th Cir. 1995).

Normally, a consent decree is enforced by contempt sanctions. *Kasper v. Bd. of Election Comm'rs of the City of Chi.*, 814 F.2d 332, 338 (7th Cir. 1987). Here, however, the consent decree contains a provision regarding enforcement. That provision outlines the procedures for enforcement, providing:

> If OAG believes that any Defendant has failed to comply with any provision of this consent decree, OAG shall notify Defendants of the alleged noncompliance in writing and shall afford the non-complying Defendant 30 days to remedy the noncompliance or to satisfy OAG that the alleged noncomplying Defendant has complied. If OAG and Defendants do not reach agreement at the end of the 30-day period, OAG may apply to the Court for appropriate relief.

(Consent Decree ¶ 8.) It further lists the remedies that the OAG may seek, including entry of a monetary judgment or injunctive relief. Thus, for any violation, the consent decree requires the OAG to provide Defendants 30 days to fix the issue and only after the expiration of that period may the OAG seek appropriate relief from this Court. Yet the OAG filed the present motion to enforce the consent decree just eight days after it was entered.

In interpreting a consent decree, "the enforcing court will look to the plain language of the written agreement as the best expression of the parties' intent." *United States v. City of Northlake, Ill.*, 942 F.2d 1164, 1167 (7th Cir. 1991). Here, the Court finds nothing ambiguous about the enforcement procedures outlined in the consent decree. That language reflecting "a compromise between competing and discordant aspirations . . . should be enforced as written." *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, No. 05 C 5488, 2006 WL 1304949, at *8 (N.D. Ill. May 10, 2006). Thus, the Court believes that Defendants should have been afforded the 30-day notice period to cure their violations before the OAG brought the present motion to enforce— particularly with respect to the initial purported violations.

Of course, the 30-day remedial period is an awkward fit for some of the issues of which the OAG complains here. In particular, Toeppen's comment to the reporter about how the OAG's lawsuit had some "MSG sprinkled on it" was published and cannot be taken back. Yet the Court is not convinced that the comment violated the consent decree's prohibition against communications conveying the impression that Defendants' services would be unavailable to a person based on discriminatory reasons. Toeppen's comment was directed at the OAG and the present lawsuit rather than the services he provided through Suburban Express and Allerton Charter. That said, the Court certainly appreciates the racial implications of Toeppen's comment. Indeed, Toeppen's explanation that his MSG reference was innocent and had no racial connotation strains credulity. Toeppen's reference to MSG, a seasoning closely linked with Asian foods, when criticizing a lawsuit addressing discrimination against Asians was far too specific for this Court to believe that it was not deliberate. And the Court can appreciate how a racial remark made by the owner of a public accommodation might make some customers feel unwelcome. Nonetheless, the Court believes that finding a violation for a remark that only indirectly concerns Toeppen's business risks impinging on Toeppen's First Amendment rights. At the same time, the racial and ethnic insensitivity Toeppen displayed in making this remark certainly demonstrates the need for the consent decree's requirement that he annually attend anti-discrimination training—a requirement that Toeppen has desperately sought to avoid.

Other purported violations resulting from Toeppen's commentary were more amenable to the cure period. Indeed, Toeppen's attacks on customers were largely made on websites or other fora over which Toeppen had control. Thus, the OAG could have notified Toeppen of the comments that it believed violated the consent decree and given Toeppen the opportunity to remove them. Yet while Toeppen did take down much of the offending commentary, at least one of the pages, the "page of shame" remained up at the time of the Court's most recent hearing. Toeppen argues that since he has shut down Suburban Express and Allerton Charter, those pages do not violate the consent decree because he has no customers to penalize or make feel unwelcome. The Court finds Toeppen's defense to be weak, but the OAG has not continued to press this particular issue. Since the remedy period has long passed, the Court will entertain

injunctive relief if the OAG seeks it. In the meantime, if he has not already, Toeppen would be well-advised to address the issue on his own to avoid court intervention.

Finally, the OAG accuses Toeppen of misrepresenting to this Court that his lack of internet access during a time when he was traveling impaired his ability to undertake compliance efforts, even though he was able to access the internet to comment on this lawsuit during his travel. In open court, Toeppen clarified that his internet access was poor during his travel and limited his ability to connect to the webserver for the companies' various websites. This Court finds Toeppen's explanation plausible and declines to impose sanctions for any misrepresentation.

The Court understands the OAG's frustrations with Defendants. In the month after the consent decree was entered, Defendants' behavior, at best, can be described as testing the consent decree's boundaries. Moreover, Toeppen's efforts at complying with the consent decree can generously be described as begrudging. Toeppen has often attempted to evade or undermine his obligations under the consent decree with bad faith arguments for highly technical interpretations of its provisions. Toeppen apparently wants to make this matter go away without meaningfully changing any of his conduct that led to the initiation of the lawsuit in the first place. But that is not the result the OAG sought to accomplish when it agreed to settle the matter. And by voluntarily entering into the consent decree, Toeppen obliged himself to fully abide by its terms. Despite what he may believe, Toeppen faced no duress in entering into the consent decree. If he believed Defendants' conduct was acceptable, he was free to make his case to a jury. Instead, Toeppen chose to settle. By settling, Toeppen agreed to certain obligations that he is required to fulfill. He cannot evade those obligations by insisting upon nonsensical interpretations of the consent decree that fit only his purposes. Rather, Toeppen must make a good faith effort at complying with each requirement in the consent decree. *See Gautreaux v. Pierce*, 535 F. Supp. 423, 429 (N.D. Ill. 1982) ("[O]nce litigants enter into a consent decree approved by the Court, they are obligated to make a good faith effort to abide by their court-approved commitments.").

For now, the Court finds that the OAG should have first followed the procedures laid out in the consent decree's enforcement provision before moving for enforcement. That is not to say, however, that this Court does not have the power at this time, or at some point in the future, to hold Defendants in contempt for violating the consent decree. In declining to *sua sponte* order Defendants to show cause as to why they should not be held in contempt, the Court takes into account the fact that the OAG has not reported any further violations since June 2019. Nonetheless, the Court warns Toeppen that its patience has worn thin and admonishes him to cease his resistance to complying with the consent decree.

Dated: March 16, 2020

_____
Andrea R. Wood
United States District Judge